UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| I.A.M. NATIONAL PENSION FUND, <br> NATIONAL PENSION PLAN, *et al.* <br> <br> Plaintiffs, <br> <br> v. <br> <br> INDUSTRIAL MATERIAL HANDLING <br> CO. OF NEW YORK, INC. <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 06-1180 (JDB) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS**

**PRELIMINARY STATEMENT**

Defendant Industrial Material Handling Co. of New York, Inc. ("IMH") requests that this Court exercise its inherent discretion and immediately stay all proceedings in this action pending a ruling by the United States Court of Appeals for the District of Columbia Circuit in an action that will be determinative of the merits of the claims asserted here. To allow this action to proceed at this time, without the benefit of a full and final judgment from the D.C. Circuit in the other action, could subject IMH to the possibility of inconsistent judgments as a result of the contradictory positions taken by Plaintiffs I.A.M. National Pension Fund ("Fund") and others ("Plaintiffs") in this action and the position taken by Plaintiffs in the action currently on appeal to the D.C. Circuit.

Specifically, Plaintiffs have obtained a judgment in their favor for withdrawal liability (the "Withdrawal Liability Action") based on a finding that a "control group" of companies (of which IMH is indisputably a member) has withdrawn from the Fund within the meaning of Section 1381 *et seq.* of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), meaning that IMH and the other members experienced a permanent cessation of the obligation to contribute or operations for which contributions are required to be made to the Fund. Plaintiffs now, however, seek to hold IMH liable for delinquent contributions pursuant to ERISA § 515 and 502(g), 29 U.S.C. §§ 1132(g) and 1145, for a period after the time when, according to the judgment, it withdrew from the Fund (the "Delinquent Contribution Action"). The two positions taken by the Fund are irreconcilable — contributions cannot, as matter of law, be owed to the Fund if a control group that includes IMH has withdrawn from the Fund.

Because the position taken by Plaintiffs in this Delinquent Contribution Action is contradictory to the position on which Plaintiffs have thus far prevailed in the Withdrawal

Liability Action, they should be permitted to prevail in this action only if the judgment in the Withdrawal Liability Action is reversed. Thus, if the D.C. Circuit affirms the judgment of the district court in the Withdrawal Liability Action, IMH cannot be liable for contributions to the Fund. In contrast, if the D.C. Circuit reverses the district court's decision in the Withdrawal Liability Action, and it is determined that the IMH control group did not withdraw from the Fund, then there is at least a possibility that IMH owes contributions to the Fund. Until the Withdrawal liability Action is fully and finally concluded, however, whether IMH could, as a matter of law, owe delinquent contributions cannot be determined without subjecting IMH to the possibility of inconsistent judgments. For these reasons, as well as a matter of judicial economy, IMH seeks a stay of all proceedings in this action until the action on appeal to the D.C. Circuit has been fully and finally resolved on appeal.

## SUMMARY OF FACTS

In the action presently before this Court, Plaintiffs assert claims against IMH under ERISA §§ 502(g) and 515 for contributions allegedly owed pursuant to a collective bargaining agreement as well as interest and liquidated damages (the "Delinquent Contribution Action"). (Complaint ("Compl.") ¶¶ 14-15).

The same Plaintiffs, however, obtained a judgment (that is currently on appeal) that companies within IMH's control group, namely TMR Realty Co., Inc. ("TMR") and Toyota Lift of New York, Inc. ("Toyota Lift"), are subject to withdrawal liability in excess of $8 million assessed against a nonparty to that action, Forklift of New York, Inc. ("Forklift") (f/k/a Clarklift of New York, Inc.). See I.A.M. National Pension Fund v. TMR Realty Co., Inc., 431 F. Supp. 2d 1 (D.D.C. 2006), appeal pending, No. 06-7064 (D.C. Cir.). The prerequisite for holding TMR and Toyota Lift liable for the withdrawal liability was that TMR, Toyota Lift, Forklift, IMH and

others are all members of the same control group and that they had permanently ceased all covered operations under the Fund. See id. That action is currently on appeal to the D.C. Circuit. The appeal is subject to an automatic stay because TMR and Toyota Lift are in bankruptcy. It is IMH's understanding, however, that TMR and Toyota Lift intend to request that the stay be lifted at the next bankruptcy hearing date, which is currently scheduled for September 20, 2006.

## ARGUMENT

### I.

### THE COURT SHOULD EXERCISE ITS DISCRETION AND STAY THE PROCEEDINGS IN THIS ACTION PENDING THE RESOLUTION OF THE ACTION ON APPEAL TO THE D.C. CIRCUIT COURT OF APPEALS.

"A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." IBT/HERE Employee Representatives' Council v. Gate Gourmet Americas, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes [sic] on its docket with economy of time and effort for itself, for counsel, and for litigants." Id. (citing Airline Pilots Ass'n v. Miller, 523 U.S. 866, 879 n. 6 (1998) (quoting Landis, 299 U.S. at 254-55). That authority should be exercised here, since otherwise IMH is at risk of being subjected to inconsistent judgments.

To appreciate the inconsistency in the legal positions taken by Plaintiffs', and of the resulting risks posed to IMH, a brief review of ERISA's withdrawal liability and delinquent contribution provisions appears to be in order. Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1446, an employer that obligates

3

itself to contribute to a multiemployer pension plan and then withdraws from such plan is subject to withdrawal liability equal to its proportionate share of the plan's "unfunded vested benefits." See 29 U.S.C. § 1381(b)(1). Withdrawal liability ensures that "the financial burden of [the] employees' vested pension benefits will not be shifted to other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." Connors v. Incoal, Inc., 995 F.2d 245, 248 (D.C. Cir. 1993) (quotation omitted). To minimize the risk of employers being able to avoid their withdrawal liability obligations, withdrawal liability is extended to all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer. 29 U.S.C. § 1301(b)(1); See, e.g., Connors, 995 F.2d at 249 (citation omitted). In other words, "[i]f two or more companies are within a control group, then they are deemed a single employer for purposes of withdrawal liability." Connors v. Brady-Cline Coal Co., 668 F. Supp. 5, 9 (D.D.C. 1987) (citations omitted); see Trustees of the United Mine Workers of America 1974 Pension Plan v. Morrison Knudsen Corp., 931 F. Supp. 4, 7 (D.D.C. 1996) (citing 29 C.F.R. § 2612).

The requirement that members of a control group be treated as a single employer applies not only to the imposition of joint and several liability among all members of the control group, but also to the evaluation of whether a withdrawal took place. See 29 U.S.C. § 1301(b)(1). An employer cannot incur a complete withdrawal unless all members of its control group have also withdrawn. See id.; 29 U.S.C. § 1383. Thus, a complete withdrawal occurs when all members of the control group permanently cease to have an obligation to contribute under the plan or permanently cease all covered operations under the plan. See id.

Here, there is no dispute that IMH and Forklift are part of the same control group as TMR and Toyota Lift, the two companies upon which a judgment has been entered for withdrawal

4

liability.  See I.A.M. National Pension Fund, 431 F. Supp. 2d at 3.  Accordingly, the position on which the Fund thus far has prevailed, that Forklift completely withdrew from the Fund necessarily means that IMH, TMR, Toyota Lift and all other members of the control group permanently ceased their obligation to contribute to the Fund or permanently ceased all covered operations that would require contributions to the Fund.  Yet in this action, the Fund takes the position that IMH continued to incur obligations to the Fund as a contributing employer, which would mean that it has not yet withdrawn from the Fund.

A stay of proceedings is warranted in this case to preclude Plaintiffs from keeping IMH in the precarious position of facing two potential liabilities when, as a legal matter, it can at worst suffer only one.  Plaintiffs cannot have it both ways — that is, they cannot now seek contributions for employees of IMH in this Delinquent Contribution Action while claiming in the Withdrawal Liability Action that the control group — including IMH — withdrew from the Fund pursuant to 29 U.S.C. § 1381 et seq.  In their most simple form, Plaintiffs' positions are that IMH owes contributions because it engaged in operations for which contributions were required, but the control group owes withdrawal liability because Forklift permanently ceased operations for which contributions were required.

IMH's position has been the same along:  If in fact it is finally determined that the control group withdrew from the Fund, then IMH — as a member of the control group — cannot possibly owe contributions to the Fund as a matter of law.  However, if it is determined that the control group has not withdrawn from the Fund, as the control group continues to contend in the Withdrawal Liability Action, then IMH will make the appropriate records available for audit and pay contributions to the Fund that are owed subject to any other defenses it may possess.  Thus, the resolution of the Withdrawal Liability Action will significantly reduce, if not entirely

5

eliminate, the scope of the dispute in this matter.

In short, until the Withdrawal Liability Action is fully and finally resolved, IMH respectfully requests that this Court stay all proceedings in this Delinquent Contribution Action.

## CONCLUSION

For the foregoing reasons, IMH's motion to stay all proceedings in this action should be granted in its entirety.

Dated: Washington, D.C.
September 18, 2006

        Respectfully Submitted,
        PROSKAUER ROSE LLP

        By: ___/s/_____
            Timothy P. Tobin (D.C. Bar No. 477694)
        1001 Pennsylvania Ave, Suite 400 South
        Washington, D.C. 20004
        Tel. (202) 416-6800
        Fax (202) 416-6899
        ttobin@proskauer.com

        Russell L. Hirschhorn (RH-3394) (*admitted pro hac vice*)
        Proskauer Rose LLP
        1585 Broadway
        New York, NY 10036-8299
        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September, 2006 a copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Stay All Proceedings was served via Facsimile and UPS Next Day Mail to the following:

>Joseph P. Martocci, Jr., Esq.
>1300 Connecticut Ave., NW
>Suite 300
>Washington, DC  20036
>Attorney for Plaintiffs
>
>Ellen O. Boardman, Esq.
>O'Donoghue & O'Donoghue, LLP
>4748 Wisconsin Ave., NW
>Washington, DC  20016

>_/s/_____
>Timothy P. Tobin
>1001 Pennsylvania Ave,
>Suite 400 South
>Washington, D.C. 20004
>Tel. (202) 416-6800
>Fax (202) 416-6899
>ttobin@proskauer.com

7