**HIRSCHHORN AFFIDAVIT**

**EXHIBIT 1**

## AGREEMENT FOR MERGER OF PENSION PLANS
## AND PROGRAM OF RELIEF

THIS AGREEMENT is made and entered into by and between the BOARD OF TRUSTEES OF THE IAM NATIONAL PENSION FUND, the BOARD OF TRUSTEES OF THE DISTRICT NO. 15 MACHINISTS' PENSION FUND, and the PENSION BENEFIT GUARANTY CORPORATION.

### I.  Statement of Purpose

1.  The parties intend that the District No. 15 Machinists' Pension Fund be merged into the IAM National Pension Fund, National Pension Plan in order to further the objective of providing an efficient and funded system of pension benefits for employees represented for collective bargaining purposes by District No. 15 of the International Association of Machinists and Aerospace Workers.

2.  The parties acknowledge that the District No. 15 Machinists' Pension Fund will soon be in need of financial assistance from the Pension Benefit Guaranty Corporation ("PBGC"); and in the absence of such assistance, the District No. 15 Machinists' Pension Fund will soon have insufficient assets to pay promised benefits to its pensioners and beneficiaries.

3.  The parties intend to settle all claims for such financial assistance through the payment of such assistance in a single sum by the PBGC.

4.  The parties acknowledge that a merger of the District No. 15 Machinists' Pension Fund into the IAM National Pension Fund is made feasible by the payment of this sum by the PBGC.

2

## II. <u>Definitions</u>

As used herein, the following words and phrases shall have the meanings stated below unless a different meaning is plainly required by the context:

1. "NATIONAL TRUSTEES" means the trustees serving as such from time to time, and their successors in office, under the Amended and Restated Trust Agreement for the I.A.M. National Pension Fund.

2. "DISTRICT NO. 15 TRUSTEES" means the trustees serving as such from time to time, and their successors, under the Agreement and Declaration of Trust of the District No. 15 Machinists' Pension Fund.

3. "NATIONAL TRUST" means the Amended and Restated Trust Agreement for the I.A.M. National Pension Fund dated January 1, 1997. A copy of the National Trust, as amended, is attached as Exhibit A.

4. "NATIONAL FUND" means the IAM National Pension Fund together with all monies or other things of value which comprise the corpus and additions to that Fund.

5. "NATIONAL PLAN" and "NATIONAL PENSION PLAN" both mean the I.A.M National Pension Fund, National Pension Plan, adopted by the National Trustees, and all amendments thereto. A copy of the National Pension Plan, as amended, is attached as Exhibit B.

6. "DISTRICT NO. 15 TRUST" means the Agreement and Declaration of Trust of the District No. 15 Machinists' Pension Fund. A copy of the District No. 15 Trust is attached as Exhibit C.

3

7. "DISTRICT NO. 15 FUND" means the District No. 15 Machinists' Pension Fund together with all monies and other things of value which comprise the corpus and additions to the that Fund.

8. "DISTRICT NO. 15 PENSION PLAN" and "DISTRICT NO. 15 PLAN" both mean the District No. 15 Machinists' Pension Plan adopted by the District No. 15 Trustees, and all amendments thereto, a copy of which is attached as Exhibit D.

9. "DISTRICT NO. 15 COVERED EMPLOYEE" means any person who on or before the Effective Date of this Agreement was an Employee as such term is defined by Section 1.12 of the District No. 15 Pension Plan and was not receiving a pension from the District No. 15 Pension Plan as of the Effective Date of this Agreement. Records of the District No. 15 Covered Employees, prior employees who have incurred a permanent break in service under the District No. 15 Pension Plan, and of anyone for whom any benefits have been paid in the past will be made available to the IAM National Pension Fund.

10. "DISTRICT NO. 15 CONTRIBUTING EMPLOYER" or "DISTRICT NO. 15 EMPLOYER" both mean each person or organization which on or before the Effective Date of this Agreement was an Employer under Section 1.09 of the District No. 15 Pension Plan. A list of District No. 15 Contributing Employers with addresses and current delinquent status is attached as Exhibit E. Records of all current and previous District No. 15 Contributing Employers will be made available to the IAM National Pension Fund.

4

11. "DISTRICT NO. 15 PENSIONER" means a person receiving pension benefits or any other type of benefits from the District No. 15 Pension Fund as of the Effective Date of this Agreement, in accordance with the District No. 15 Pension Plan. It is expressly understood that all such Pensioners were awarded benefits in accordance with the District No. 15 Pension Plan. Records of all current pensioners and beneficiaries and of all prior pensioners and beneficiaries whose benefits have ceased will be made available to the IAM National Pension Fund.

12. "UNION" means District No. 15 of the International Association of Machinists and Aerospace Workers.

13. "EFFECTIVE DATE" means the Effective Date of this Agreement as set forth in Article VIII, Paragraph 7 of this Agreement.

14. "DISTRICT NO. 15 ACCOUNT" has the meaning set forth in Article V, paragraph 2.

15. "AGREEMENT PERIOD" has the meaning set forth in Article V, paragraph 3.

16. "STANDARD CONTRACT LANGUAGE" has the meaning set forth in Article IV, paragraph 1. A copy of the current Standard Contract Language is attached as Exhibit F.

17. "EXPENSE ALLOCATION" has the meaning set forth in Article V, paragraph 5.

5

III.  Adoption of the Pension Plan

The District No. 15 Trustees hereby adopt all provisions of the National Pension Plan in their entirety with the following special provisions:

1.  Each District No. 15 Contributing Employer will be considered to be a Contributing Employer under the National Trust Agreement upon its acceptance by the National Trustees pursuant to Article IV.  However, for purposes of Section 1.5 of the National Pension Plan, the Contribution Date of each District No. 15 Contributing Employer shall be January 1, 1998.

2.a)  Each District No. 15 Covered Employee will be given Future Service Credit under the provisions of Article III of the National Pension Plan for those periods of his National Pension Plan Covered Employment on or·after January 1, 1998.

b)  For periods prior to January 1, 1998, each District No. 15 Covered Employee will retain his Years of Vesting and Credited Service earned under the District No. 15 Pension Plan subject to the provisions of that Plan.  Any District No. 15 Covered Employee who is not fully vested under the District No. 15 Plan on the Effective Date shall continue to accrue Vesting Service under the terms of that Plan for Covered Employment under the National Plan after the Effective Date but only for purposes of vesting in the benefit accrued under the District No. 15 Plan before the Effective Date.

c)  Periods of service counted under the preceding paragraph 2(b) shall be treated as Predecessor Plan Service under Section 3.3(d) of the National Pension Plan, provided the District No. 15 Covered Employee completes 1200 Hours of Service after December 31, 1997.·

6

3.a)  Except as provided under paragraphs 3(b)-(d), pension amounts for each District No. 15 Covered Employee shall be determined under the National Pension Plan's formula for periods on or after January 1, 1998 based on Future Service Credit earned under the National Pension Plan on or after that date, and pension amounts for District No. 15 Covered Employees shall be determined under the District No. 15 Pension Plan's formula for periods prior to January 1, 1998 based solely on credited service earned under that Plan prior to that date.  In order to be eligible for benefits under the National Pension Plan for periods after January 1, 1998, each District No. 15 Covered Employee must meet the eligibility requirements of the National Pension Plan, including but not limited to 1200 Hours of Service beginning January 1, 1998.  Each District No. 15 Covered Employee will receive the sum of the pension amount determined under the National Pension Plan on or after January 1, 1998, if any, plus the pension amount determined under the District No. 15 Pension Plan prior to January 1, 1998, if any.

b)  For any pension first effective on and after the Effective Date of this Agreement, the pension amount attributable to the District No. 15 Pension Plan credited service under paragraph 2(b) will be valued at the applicable rates and benefits as set forth in Article III of the District No. 15 Pension Plan on the Effective Date; and, the provisions of paragraph 3(a) notwithstanding, the pension amount attributable to National Pension Plan credited service under paragraph 2(a) earned during the Agreement Period (as set forth in Article V, paragraph 3) will also be valued at the same applicable rates and benefits as set forth in Article III of the District No. 15 Pension Plan on the Effective Date.

7

c)  The pension amount attributable to District No. 15 Pension Plan credited service under paragraph 2(b) will not be increased during the Agreement Period (as set forth in Article V, paragraph 3) unless the increase is approved by the PBGC.  The applicable pension amount attributable to National Pension Plan credited service under paragraph 2(a) may be increased during the Agreement Period by action of the National Trustees, provided the National Fund's actuary certifies that such increase is totally funded by an increase in the applicable District No. 15 Contributing Employer's contribution rate or the increase is approved by the PBGC in writing.  District No. 15 Covered Employees who retire during the Agreement Period will not be given increases given to other National Pension Fund pensioners and beneficiaries, unless the National Fund's actuary certifies that such increases are totally funded by an increase in the applicable District No. 15 Contributing Employer's contribution rate, or the increase is approved by the PBGC.

d)  The limitations on benefit increases stated in subparagraph (c) shall continue in effect throughout the entire Agreement Period.  Thereafter, benefit increases, if any, shall be in the sole and absolute discretion of the National Trustees.  However, for any pension first effective after the expiration of the Agreement Period, the pension amount attributable to National Pension Plan credited service earned under paragraph 2(a) after the Agreement Period will be valued in accordance with the applicable terms of the National Plan.

e)  If just prior to January 1, 1998 the applicable District 15 Contributing Employer was already a contributing employer to the IAM National Pension Fund, the limitations of subparagraphs (c) and (d) shall apply only to benefits attributable to that

8

Employer's contribution rate to the District No. 15 on December 31, 1997, and any increases thereafter to that Employer's contribution rate shall be treated under the National Plan without regard to the limitations therein.

4. All District No. 15 Pensioners, who as of the Effective Date have retired under the provisions of the District No. 15 Pension Plan and are receiving monthly benefits from that Plan will continue to receive such benefits as of the Effective Date. Such pensions shall continue in the same form. No District No. 15 Pensioner shall be entitled to have his pension otherwise redetermined under the National Plan or under this Agreement except under Section 7.7 of the National Pension Plan and then subject to the provisions of paragraph 3(b) above. District No. 15 Pensioners will not be given any increases given to other National Pension Fund pensioners and beneficiaries unless the increase is approved by the PBGC. This limitation on increases shall continue in effect throughout the entire Agreement Period (as set forth in Article V, paragraph 3). Thereafter, increases, if any, shall be in the sole and absolute discretion of the National Trustees.

5. Contingent upon receipt from the PBGC of the monies referred to in Article V, paragraph 4, the National Fund will assume the obligation for all benefits under the District No. 15 Pension Plan for active and inactive employees under the District No. 15 Pension Plan in the amount they would have been eligible to receive under the District No. 15 Pension Plan calculated as of the Effective Date of this Agreement. In accordance with Section 4231 of ERISA, no participant's or beneficiary's accrued benefit will be

9

lower immediately after the Effective Date of this merger than the benefit immediately before that date.

6.a)  The beneficiary, or surviving spouse if applicable, of any District No. 15 Covered Employee or any other participant under the District No. 15 Pension Plan who died prior to January 1, 1998 will receive the death or survivor benefits, if any, to which he is entitled under the terms of the District No. 15 Pension Plan.  The beneficiary, or surviving spouse if applicable, of any District No. 15 Pensioner who dies on or after January 1, 1998 will receive the death or survivor benefit, if any, to which he is entitled under the terms of the District No. 15 Pension Plan.

b)  The beneficiary, or surviving spouse if applicable, of any District No. 15 Covered Employee who dies on or after January 1, 1998 will be entitled to the sum of:

> (i) the death or surviving spouse benefit under the National Pension Plan, the eligibility for which shall be determined using total credited service under paragraph 2 but the amount of which shall be based solely on credited service earned under the National Pension Plan after January 1, 1998, and

> (ii) the death or surviving spouse benefit under the District No. 15 Pension Plan, determined in accordance with the District No. 15 Pension Plan as of the Effective Date, the eligibility for which shall be determined using total credited service under paragraph 2 but the amount of which shall be based solely on credited service earned under the District No. 15 Pension Plan before January 1, 1998.

(c)  No death benefits will be payable under this Agreement if death benefits have previously been paid under the District No. 15 Pension Plan.

10

## IV. Contributing Employers

1. Each District 15 Contributing Employer, who as of December 31, 1997 is signatory to a collective bargaining agreement with the Union, may be accepted by the National Trustees for participation as a Contributing Employer within the meaning of Section 1.3 of the National Pension Plan. To be accepted, each Contributing Employer must meet various administrative requirements which, among other things, include the monthly reporting and the monthly payment of contributions on the basis of hours or days and which also include incorporating Standard Contract Language into the collective bargaining agreement or signing such language as an addendum to the collective bargaining agreement. The Standard Contract Language sets forth, among other things, the details of the basis on which contributions will be made to the IAM National Pension Fund. As an express condition for its acceptance as a Contributing Employer to the IAM National Pension Fund, each District No. 15 Contributing Employer must agree to abide by the Standard Contract Language for the National Pension Plan as an addendum to its collective bargaining agreement effective January 1, 1998.

2. Further, each District No. 15 Contributing Employer shall also sign the Employer Agreement which is attached hereto and incorporated by reference, as a further express condition of its acceptance as a Contributing Employer to the IAM National Pension Fund as of January 1, 1998.

3. Upon its failure to agree to any of the conditions in paragraphs (1) and (2), the National Trustees will treat the District No. 15 Employer as having rejected this

11

Agreement and as having withdrawn from the District No. 15 Pension Plan on December 31, 1997. In addition, this Agreement will not be effective unless District No. 15 Employers representing at least eighty-five percent of the contributions made to the District No. 15 Fund during 1997 agree to the conditions of paragraphs (1) and (2) by July 1, 1998. If there is an insufficient number of the District No. 15 Employers who have so agreed by that date, this Agreement shall be null and void ab initio and the parties shall return to the status quo as of December 31, 1997, and the National Pension Fund and its Trustees shall be relieved of any liability to any person under this Agreement or otherwise.

    4. It is recognized by the parties that the District No. 15 Pension Plan currently has significant unfunded vested benefits under ERISA while the National Pension Plan currently has no unfunded vested benefits under ERISA.

    a) For each District No. 15 Employer who is obligated to contribute to the National Fund as of January 1, 1998 by meeting the conditions of paragraphs (1) and (2) above, and who subsequently withdraws during the Agreement Period, the amount of unfunded vested benefits allocable to such withdrawing District No. 15 Employer shall be determined as if each plan had remained a separate plan using the withdrawal liability provisions of the District No. 15 Trust and the District No. 15 Plan modified as follows:

    (i) For such withdrawing District No. 15 Employer, the following rules are hereby adopted pursuant to Section 4224 of ERISA providing for the terms and conditions for the satisfaction of their statutory withdrawal liability under Title IV of ERISA. Such withdrawal liability will equal the greater of:

12

(1) the District No. 15 Employer's withdrawal liability determined as if the District 15 No. Fund were still a separate fund, in accordance with the rules of the District No. 15 Fund in effect on December 31, 1997, or

(2) the Net Mass Withdrawal Liability.

(ii) The District No. 15 Employer's Net Mass Withdrawal Liability equals 160 percent of the liability that the employer would have incurred if withdrew on December 31, 1997, reduced by the net contributions made by the employer on or after the Effective Date. Net contributions for a plan year after the Effective Date are total contributions of the employer less the Expense Allocation determined in accordance with Article V, paragraph 5 and less the cost of the accruals earned by the employer's employees during that year pursuant to Article III, paragraphs (2) and (3).

(iii) The annual payment amount for the District No. 15 Employer's withdrawal liability will be equal to the greater of the amount determined under Section 4219(c)(1)(C) of ERISA, or the amount necessary to amortize its withdrawal liability in 20 annual payments.

(iv) District No. 15 Employers who engage in a sale of assets during the Agreement Period which would result in a complete or partial withdrawal if not for Section 4204 of ERISA will be considered to have withdrawn unless the sale meets the conditions of Section 4204 and the purchaser agrees to assume the entire contribution history for the purchased operations for purposes of determining its liability. The purchaser must further agree to be considered to be a District No. 15 Employer who was obligated to contribute to the National Fund as of January 1, 1998 and who is subject to this paragraph 4. Further, without limitation, unless all entities resulting from a change described in section 4218(1) of ERISA agree to the rules in this paragraph (4), then the District No. 15 Employer shall be considered to have withdrawn solely because of a change described in section 4218(1) of ERISA.

(v) Except as expressly provided herein, these rules do not supplant, waive, or alter the application of Title IV of ERISA, including any regulatory, administrative or judicial interpretation thereof. Accordingly, and without limitation, notice, assessment, and collection of withdrawal liability shall be as provided for withdrawal liability under sections 4219, 4221, and 4301 of ERISA. Notwithstanding the foregoing, each District No.15 Employer,

13

as a condition of its acceptance as a Contributing Employer to the IAM National Pension Fund, must agree to waive all rights to request review, demand arbitration, or otherwise challenge any determination of withdrawal liability under ERISA or under this Agreement, including without limitation, the right to challenge the amount and methods of withdrawal liability as set forth herein, which amount and methods shall be final and binding for all purposes.

b) For each District No. 15 Employer who is obligated to contribute to the National Fund as of January 1, 1998 by meeting the conditions of paragraphs (1) and (2) above, and who subsequently withdraws after the expiration of the Agreement Period, there will be no withdrawal liability in the event of a partial or complete withdrawal, provided the National Plan has no unfunded vested benefits or withdrawal liability under Title IV of ERISA. If the National Plan has unfunded vested benefits, whether and to what extent such a District No. 15 Employer may have withdrawal liability will be calculated and determined in accordance with applicable law on the same basis as for any other employer in the National Plan, without regard to any unfunded vested benefits or potential withdrawal liability of the District No. 15 Fund or under this paragraph 4. The PBGC, by signing this Agreement, approves this alternative allocation method for the later full integration of the District No. 15 Account.

V.  Trust Succession, Transfer of Assets, and Maintenance of Separate Account

1. On July 1, 1998, provided the eighty-five percent condition set forth in Article III, paragraph 3, has been met at that time, the District No. 15 Trustees shall transfer all assets, property, and liabilities of the District No. 15 Pension Fund to the National Trustees, as successor Trustees, who accept the trust and agree to accept all such

14

assets, property, and liabilities. Such assets and property shall include all cash, deposits, securities, insurance contracts, experience dividends, contract interest, refunds, claims, all other assets, books of account, documents, and records. The District No. 15 Trustees agree to deliver or cause to be delivered all such assets and property promptly and to execute or cause to be executed any assignments or other documents necessary or appropriate to conform, vest, or perfect title thereto in the National Trustees. The rights, duties, responsibilities, and liabilities of the District No. 15 Trustees over the assets, property, and liabilities of the District No. 15 Pension Fund shall be assumed by the National Trustees upon their receipt of such assets, property, and liabilities; subject, however, to the audit requirements set forth in Article VIII, paragraph 4. All property so transferred shall belong to the National Trustees as part of the National Fund to be held and administered by the National Trustees as a separate account of the National Fund in accordance with this Agreement. The National Trustees shall assume full responsibility for the day to day administration of the District No. 15 Pension Fund on July 1, 1998. However, the District No. 15 Trustees shall not formally resign until all assets, property, and liabilities of the District No. 15 Pension Fund shall have been transferred.

     2. The National Trustees will maintain a separate account of the assets and liabilities attributable to the District No. 15 Pension Fund. This "District No. 15 Account" will be credited with:

     a) The assets of the District No. 15 Pension Fund as of December 31, 1997;

15

b)   Withdrawal liability payments determined in accordance with this Agreement;

c)   Contributions paid by District No. 15 Employers who were obligated to contribute to the National Fund as of January 1, 1998 by meeting the conditions of Article IV, paragraphs (1) and (2) and their successors minus the Expense Allocation and the cost of the accruals earned by their employees under the National Plan on and after January 1, 1998.

d)   Earnings thereon (determined at the same rate as earnings on the total assets of the National Fund).  Benefit payments on and after January 1, 1998 for benefits accrued prior to the Effective Date and the Expense Allocation on and after January 1, 1998 will be debited from the District No. 15 Account.  The National Fund's Trustees will also determine the value of vested benefits attributable to work performed for District No. 15 Employers and their successors for purposes of assessing withdrawal liability.  The National Fund will provide the PBGC with an audited statement of the District No. 15 Account annually during the Agreement Period.

3.  The National Trustees will maintain the District No. 15 Account as a separate account for all purposes of this Agreement until such time as the Trustees of the National Fund determine, subject to the approval of the PBGC, that the District No. 15 Account shall cease to exist, and that District No. 15 Pension Fund shall be fully integrated with the National Fund for all purposes.  This determination by the National Trustees may be made and PBGC approval may be sought at any time, but under no circumstances may the full integration of the District 15 Account actually occur before

16

January 1, 2003. The PBGC will disapprove the determination *only if the* National Fund cannot pass the solvency tests in Section 4231.6 of the PBGC regulations or if the PBGC finds that the integration creates an unreasonable risk of loss to participants and beneficiaries of the National Fund or to the PBGC. For purposes of this Agreement, the term "Agreement Period" shall mean the period on and after January 1, 1998 during which the separate District No. 15 Account is maintained under this Agreement.

4.a)   The District No. 15 Account will be treated as if it were still a separate fund for purposes of financial assistance. The PBGC will pay the National Fund the sum of $85.7 million on October 1, 1999, representing the present value of PBGC's future financial assistance to the District 15 Fund, as the total and final amount of financial assistance to the District No. 15 Account. Upon payment of this amount by the PBGC, the National Fund shall have no further claim for financial assistance for the District No. 15 Account.

b)   Prior to October 1, 1999, the National Fund will pay any shortfall in the District 15 Account for the payment of benefits and administration; and upon receipt of the payment from the PBGC, the District No. 15 Account will refund the shortfall to the National Fund with interest at the National Fund's actuarially assumed funding rate. If the PBGC fails to make its required payment to the National Fund, the National Fund shall have no financial obligation whatsoever to the District 15 Account and will be entitled to recover from the District 15 Account any monies it has previously paid over to the District 15 Account with interest at the National Fund's actuarially assumed funding rate.

17

c) The financial assistance payment received from PBGC will be treated as a liability of the District No. 15 Account.  PBGC will not seek repayment of financial assistance from the District 15 Account unless the assets of the District 15 Account (including the financial assistance) exceed its liabilities for vested benefits at the time the District 15 Account is fully integrated in the IAM National Pension Fund, provided such excess is caused by future withdrawal liability payments on the 160 percent payment terms of Article IV, paragraph 4 (in which case the PBGC will receive the excess of such assets resulting from the extra 60% withdrawal liability payments over the liabilities for vested benefits).

5.  During the Agreement Period, the Expense Allocation of the National Fund to the District No. 15 Account will be as follows:

a)  The District No. 15 Account will be charged with any separately identified direct administrative expenses such as audit fees, actuarial fees, and PBGC premiums.

b)  The District No. 15 Account will be charged with a percentage of indirect expenses based on an allocation factor.  The allocation factor will be determined based on the average of the District No. 15 Account's percentages of:  1) total contributions, 2) total number of participants, 3) total number of contributing employers, 4) total number of active participants, 5) total number of benefit check recipients, and 6) total gross income, each as compared to the totals of the IAM National Pension Fund.

18

## VI.  Cooperation

The parties will cooperate in all phases of the carrying out of this Agreement, including the supplying of appropriate information and documentation to each other, the filing of required documents with various governmental agencies, and all other matters related to the implementation of this Agreement.  All records of the District No. 15 Pension Fund will be transferred to the National Pension Fund.

## VII.  Government Filings

1. The parties agree to complete and file all notices and forms required by the various governmental agencies because of this Agreement.

2. Attached hereto as Exhibit G-1 is a Notice of Proposed Merger which the parties have already filed with the PBGC.  The parties also agree to file with the PBGC the Request for Compliance Determination attached as Exhibit G-2.

3. If the IRS or any other governmental agency other than the PBGC disapproves of this Agreement, and the National Pension Trustees and the District No. 15 Trustees cannot agree upon modifications to meet any objections of such governmental agency, then this Agreement shall be considered a nullity and the parties shall revert to the status quo as of December 31, 1997.

## VIII.  Miscellaneous

1.(a)  The most recent IRS determination letters for both plans are attached hereto as Exhibits H-1 and H-2.

19

(b) The District No. 15 Trustees verify that they have amended the District No. 15 Pension Plan for purposes of complying with TEFRA, DEFRA, REA, and TRA '86. These amendments were filed with the IRS for determination letter(s) that the Plan is in compliance with these laws. Those determination letter(s) are attached to Exhibit G-1.

2. Effective January 1, 1998, the District No. 15 Trust and Plan are hereby amended and superseded by the provisions of the National Trust and Plan and the provisions of this Agreement. For credits earned on or after January 1, 1998, the provisions of the District No. 15 Pension Plan shall not apply except as provided herein. However, this Agreement shall not be construed so as to diminish accrued benefits earned under the District No. 15 Pension Plan prior to the Effective Date.

3. Each party hereby certifies that the respective documents attached hereto are true, accurate, and complete copies of those documents, including all amendments. The District No. 15 Trustees certify that the only benefits provided under the District No. 15 Pension Plan are those set forth in the attached plan of benefits and any attached amendments. The District No. 15 Trustees further certify that no undisclosed litigation is pending or has been threatened on behalf of or against the District No. 15 Trust and Plan or the District No. 15 Trustees, that no governmental agency or individual is objecting to or has disapproved any reports submitted or action taken by the District No. 15 Trustees, that there is no undisclosed agreement or contract in existence that is not subject to cancellation upon notice of sixty (60) days or less, that no payments, contracts,

20

or investments have been made or other liabilities incurred other than those incidental to

the regular course of administering the District No. 15 Pension Plan and Trust, that each

of the District No. 15 Trustees has been duly appointed and is serving in conformity with

the District No. 15 Trust, that the District No. 15 Pension Plan and Trust have been

strictly interpreted in accordance with their terms, and that all representations and

warranties contained in this Agreement are true and accurate.

Each and every representation made by the District No. 15 Trustees herein

shall survive the closing and consummation of the transaction contemplated by this

Agreement, notwithstanding any examination or investigations made by the National

Trustees.

The National Trustees shall have the right and full discretion to terminate

and rescind this Agreement by written notice to the District No. 15 Trustees if the

National Trustees learn of any material fact or condition with respect to the District No.

15 Pension Fund which is materially at variance with any representation, opinion, or

certification in this Agreement.

4.  The effectiveness of this Agreement shall be conditioned upon and

subject to audits of the District No. 15 Pension Fund as of the Effective Date, and as of

the date of the last transfer of assets and property pursuant to Article V, paragraph 1, by

an auditing firm acceptable to the National Trustees, and the National Trustees' approval

of said audit report.  If the audits are not approved by the National Trustees in their sole

discretion, this Agreement shall be null and void ab initio, the parties shall return to the

21

status quo as of December 31, 1997 and the National Pension Fund and its Trustees shall be relieved of any liability to any person under this Agreement or otherwise. It is understood that the National Trustees will not unreasonably withhold approval of the audits.

5.    The District No. 15 Trustees have attached hereto as Exhibit I a Certificate of Insurance verifying that they have fiduciary liability insurance in force for three years after the Effective Date, a copy of the policy, and a copy of the application for the policy.

6. This Agreement is further conditioned upon the Trustees of the District No. 15 Pension Fund, with the assistance of the National Fund Trustees, working out an arrangement with any insurance companies and/or investment managers of the assets of the District No. 15 Pension Fund for the transfer of all assets of the District No. 15 Pension Fund now held by any such insurance companies and investment managers to the National Fund or its designated agent.

7. The Effective Date of this Agreement shall be January 1, 1998.

8. The National Trustees shall have the full discretionary authority to interpret and apply the terms of this Agreement, the District No. 15 Trust, the District No. 15 Plan, the National Trust, and the National Plan. All questions and controversies arising hereunder shall be resolved solely by the National Trustees in their discretion and will not be subject to any arbitration grievance procedure provided in a collective bargaining agreement.

22

9. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those for which it was held invalid, shall not be affected thereby.

10. This Agreement cannot be amended except by an instrument in writing executed by the parties hereto.

11. This Agreement may be executed in one or more counterparts and by different parties on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IX.  Pension Benefit Guaranty Corporation Provisions

1. The Pension Benefit Guaranty Corporation hereby gives its assent to the provisions of this Agreement and gives its specific approval to the allocation methods and withdrawal liability provisions set forth herein. The PBGC also agrees that it is itself specifically bound to its obligations hereunder as set forth in Articles IV and V and in this Article IX.

2. The PBGC represents and warrants that it has full power and authority to enter into and perform its obligations under this Agreement; that no authorization or approval or other action is required for the due execution, delivery, and performance by the PBGC of this Agreement; that the execution, delivery, and performance by the PBGC of this Agreement have been duly authorized by all necessary corporate and government

23

actions, are within its statutory authority, and will not violate any law applicable to the

PBGC. The PBGC further represents that this Agreement constitutes a legal, valid, and

binding contract and agreement of the PBGC enforceable against the PBGC in accordance

with its terms and applicable law.

3. By executing this Agreement, the PBGC affirms that it has determined

that the rules adopted hereunder for satisfaction of withdrawal liability are not inconsistent

with Title IV of ERISA and the regulations thereunder, and that such rules provide other

terms and conditions for the satisfaction of an employer's withdrawal liability in

accordance with Section 4224 of ERISA.

IN WITNESS WHEREOF, the parties hereto, in consideration of the mutual

promises and undertakings herein set forth and intending to be legally bound hereby, have

caused this Agreement to be executed as of the dates set out below by the persons duly

authorized:

TRUSTEES OF THE DISTRICT NO. 15
MACHINISTS' PENSION FUND, executed this
30 day of _____April_____, 1998.

TRUSTEES OF THE I.A.M.
NATIONAL PENSION FUND,
executed this 30 day of
_____April_____, 1998.

_____
Co-Chairman


_____
Co-Chairman

24

PENSION BENEFIT
GUARANTY CORPORATION,
executed this 30th day of
April _____, 1998.


_____
Ellen A. Hennessy
Deputy Executive Director and
  Chief Negotiator

## AMENDMENT TO THE
## AGREEMENT AND DECLARATION OF TRUST
## OF THE DISTRICT NO. 15 MACHINISTS' PENSION FUND

WHEREAS, the Trustees have investigated the possibility of the District No. 15 Machinists' Pension Fund merging into the IAM National Pension Fund; and

WHEREAS, after such investigation, they have determined that such a merger would be in the best interest of the participants and beneficiaries of the District No. 15 Machinists' Pension Fund and the Trustees should have authority to enter into such a merger if they deem it appropriate;

WHEREAS, Article XIV of the Agreement and Declaration of Trust provides that the Trustees may amend the Agreement to any extent, and at any time, by an instrument in writing executed by the Trustees;

NOW, THEREFORE, the Trustees do hereby amend the Agreement and Declaration of Trust of the District No. 15 Machinists' Pension Fund by adding the following Section 10 to Article VI:

Section 10. Notwithstanding any other provision of this Agreement and Declaration of Trust, when, in the discretion of the Trustees, it is in the best interest of the Participants and Beneficiaries, the Trustees may take whatever action they deem appropriate to merge or integrate the Pension Fund into the IAM National Pension Fund. Any instruments necessary or appropriate to consummate the merger and transfer of assets shall be effective upon adoption by the Trustees.

_____          _____
Trustee                                   Trustee

_____
Trustee

_____
Trustee

_____
Trustee

_____
Trustee

# RESOLUTION OF THE
## TRUSTEES OF THE DISTRICT NO. 15 PENSION FUND

Having found that it is in the best interest of the participants in the District No. 15 Machinists' Pension Plan to merge the District No. 15 Machinists' Pension Fund into the IAM National Pension Fund, National Pension Plan;

IT IS HEREBY RESOLVED, that the Trustees enter into the AGREEMENT FOR MERGER OF PENSION PLANS AND PROGRAM OF RELIEF with the Trustees of the IAM National Pension Fund and the Pension Benefit Guaranty Corporation (PBGC); and

BE IT FURTHER RESOLVED, that the Agreement and Declaration of Trust of the District No. 15 Machinists' Pension Fund and the District No. 15 Machinists' Pension Plan are hereby amended by substituting in place of the provisions thereof the provisions of the National Pension Plan of the IAM National Pension Fund and the Amended and Restated Trust Agreement of the IAM National Pension Fund with the special provisions set out in said AGREEMENT FOR MERGER OF PENSION PLANS AND PROGRAM OF RELIEF; and

BE IT FURTHER RESOLVED, that upon completion of the merger requirements set forth in said AGREEMENT FOR MERGER OF PENSION PLANS AND PROGRAM OF RELIEF that all assets of the District No. 15 Machinists' Pension Fund shall be transferred to the Trustees of the IAM National Pension Fund in accordance with the AGREEMENT FOR MERGER OF PENSION PLANS AND PROGRAM OF RELIEF.

IN WITNESS WHEREOF, the parties have hereunto set their hands and

seals this 30 day of ___April___, 199 8

TRUSTEES OF THE DISTRICT NO. 15
MACHINISTS' PENSION FUND