# HIRSCHHORN AFFIDAVIT

# EXHIBIT 2

## EMPLOYER AGREEMENT FOR MERGER OF PENSION PLANS AND PROGRAM OF RELIEF

1. The undersigned Employer, having entered into a collective bargaining agreement requiring contributions to the District No. 15 Machinists' Pension Fund, hereby consents and agrees to be bound by all of the terms and provisions of the Agreement for Merger of Pension Plans and Program of Relief (Funds' Merger Agreement) by and between the Trustees of the District No. 15 Pension Fund, the Trustees of the IAM National Pension Fund, and the Pension Benefit Guaranty Corporation.

2. The undersigned Employer further agrees to be bound by the Amended and Restated Trust Agreement of the IAM National Pension Fund, all amendments thereto, the appointment of the National Trustees and their successors, and also agrees to be bound by the attached Standard Contract Language and abide by all the rules established by the Trustees of the IAM National Pension Fund, including those rules established for the payment of contributions and the collection of delinquent payments.

3. The undersigned employer further agrees to make contributions to the IAM National Pension Fund for hours on and after January 1, 1998 in accordance with the Standard Contract Language. The employer understands and agrees that all such contributions for periods on and after January 1, 1998 will be held in escrow, with interest at the rate of five percent per annum, by the IAM National Pension Fund until the later of July 1, 1998 or the acceptance by the National Fund Trustees of the undersigned Employer as a Contributing Employer of the IAM National Pension Fund. If the merger provided in the Funds' Merger Agreement is not consummated, the monies held in escrow

2

with interest will be forwarded by the IAM National Pension Fund to the District No. 15 Pension Fund. If the merger is consummated but the Employer is not accepted by the National Trustees, the monies held in escrow with interest will be returned to the Employer.

4. The undersigned employer further agrees that, during the Agreement Period (the period between January 1, 1998 and the full integration of the District No. 15 Pension Fund into the IAM National Pension in accordance with the Funds' Merger Agreement), it will contribute to the IAM National Pension Fund at a rate which is no less than the rate for which it was required to contribute immediately prior to January 1, 1998. The undersigned employer also agrees that its total annual contributions for each year during the Agreement Period will be no less than 90 percent of the amount that the employer was required to contribute to the District No. 15 Machinists' Pension Fund for 1997.

5. The undersigned employer further agrees to the rules summarized below and set forth fully in the Funds' Merger Agreement pursuant to Section 4224 of ERISA, providing for the terms and conditions for the satisfaction of its statutory withdrawal liability under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") should it withdraw from the National Fund on or after January 1, 1998.

a) For any withdrawals occurring during the Agreement Period, the amount of unfunded vested benefits allocable to the withdrawing employer shall be

3

determined as if each plan had remained a separate plan using the withdrawal liability provisions of the District No. 15 Trust and the District No. 15 Plan modified as follows:

    (i) Such withdrawal liability will equal the greater of:

        (1) the employer's withdrawal liability determined as if the District No. 15 Fund were still a separate fund, in accordance with the rules of the District No. 15 Fund in effect on December 31, 1997, or

        (2) the Net Mass Withdrawal Liability.

    (ii) The employer's Net Mass Withdrawal Liability equals 160 percent of the liability that the employer would have incurred if it withdrew on December 31, 1997, reduced by the net contributions made by the employer on or after January 1, 1998. Net contributions for a plan year on or after January 1, 1998 are total contributions of the employer less the Expense Allowance (as defined in the Fund's Merger Agreement) and less the cost of the accruals earned by the employer's employees during that year.

    (iii) The annual payment amount for the employer's withdrawal liability will be equal to the greater of the amount determined under Section 4219(c)(1)(C) of ERISA, or the amount necessary to amortize its withdrawal liability in 20 annual payments.

    (iv) If the undersigned employer engages in a sale of assets which would result in a complete or partial withdrawal if not for Section 4204 of ERISA, the employer will be considered to have withdrawn unless the sale meets the conditions of Section 4204 and the purchaser agrees to assume the entire contribution history for the purchased operations for purposes of determining its liability. The purchaser must further agree to be considered to be a District No. 15 Employer who was obligated to contribute to the National Fund as of January 1, 1998 and who is subject to this Agreement and the withdrawal liability provisions of the Funds' Merger Agreement. Further, without limitation, unless all entities resulting from a change described in Section 4218(1) of ERISA agree to the rules in this Agreement, then the undersigned employer shall be considered to have withdrawn solely because of a change described in Section 4218(1) of ERISA.

4

(v) Except as expressly provided herein, these rules do not supplant, waive, or alter the application of Title IV of ERISA, including any regulatory, administrative or judicial interpretation thereof. Accordingly, and without limitation, notice, assessment, and collection of withdrawal liability shall be as provided for withdrawal liability under Sections 4219, 4221, and 4301 of ERISA. Notwithstanding the foregoing, the undersigned employer hereby waives all rights to request review, demand arbitration, or otherwise challenge any determination of withdrawal liability under ERISA or under this Agreement, including without limitation, the right to challenge the amount and methods of withdrawal liability as set forth herein, which amount and methods shall be final and binding for all purposes.

b) If the undersigned employer withdraws after the expiration of the Agreement Period, there will be no withdrawal liability in the event of a partial or complete withdrawal, provided the National Plan has no unfunded vested benefits or withdrawal liability under Title IV of ERISA. If the National Plan has unfunded vested benefits, whether and to what extent the employer may have withdrawal liability will be calculated and determined in accordance with applicable law on the same basis as for any other employer in the National Plan, without regard to any unfunded vested benefits or potential withdrawal liability of the District 15 Fund or under this paragraph 4.

6. The undersigned employer understands that by signing this Agreement it is avoiding an immediate assessment of withdrawal liability, a likely increase in its required contributions as set forth in Section 4243 of ERISA, and a potential assessment of mass withdrawal liability pursuant to Sections 4209 and 4219(c)(1)(D) of ERISA.

7. The undersigned employer represents and warrants that it has full power and authority to enter into this Agreement on behalf of itself and all trades or business under common control with it, as described in Section 4001(b)(1) of ERISA, and this

5

Agreement constitutes a legal, valid, and binding contract and agreement for the employer and all trades or businesses under common control with it, as described in section 4001(b)(1) of ERISA, enforceable against them in accordance with its terms and applicable law.

Dated: 6-16-98

(Employer) CLARKLIFT OF NY

By _____

Title _____